IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02679-NRN

V.D.,

Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social Security,[1]

Defendant.

---

**OPINION AND ORDER**

---

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff V.D.[2] was not disabled for purposes of

the Social Security Act. AR[3] 17–30. Plaintiff has asked this Court to review that

decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have

agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C.

§ 636(c). ECF No. 9.

---

[1] Martin O'Malley became the Commissioner of Social Security ("Commissioner")
on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No
further action need be taken to continue this suit by reason of the last sentence of
section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Pursuant to D.C.COLO.LAPR 5.2, "[a]n order resolving a social security appeal
on the merits shall identify the plaintiff by initials only."

[3] All references to "AR" refer to the sequentially numbered Administrative Record
filed in this case. ECF Nos. 8 and 8-1 through 8-9.

**Standard of Review**

In Social Security appeals, the Court reviews the decision of the administrative law judge ("ALJ") to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Pisciotta v. Astrue,* 500 F.3d 1074, 1075 (10th Cir. 2007). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Raymond v. Astrue*, 621 F.3d 1269, 1271–72 (10th Cir. 2009) (internal quotation marks omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The Court cannot reweigh the evidence or its credibility. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). However, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d, 1067, 1070 (10th Cir. 2007). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

**Background**

At the second step of the Commissioner's five-step sequence for making

determinations,[4] the ALJ found that Plaintiff had the following severe impairments:

> degenerative disc disease and spondylosis of lumbar spine; degenerative
> disc disease of the cervical spine; degenerative disc disease of the thoracic
> spine; degenerative joint disease of bilateral hips; osteoarthritis of bilateral
> knees; status-post rupture and re-tear of left anterior cruciate
> ligament/meniscus of left knee; arthritis of right ankle; asthma, with
> seasonal allergic rhinitis/environmental allergies; a neuropathic condition
> (variably called neuropathy, polyneuropathy, or right peroneal
> mononeuropathy); and obesity (20 CFR 404.1520(c) and 416.920(c)).

AR 20. The ALJ deemed other impairments to be non-severe, including upper

respiratory infection, insomnia, hyperlipidemia, acute foreign body of the left ear canal,

colon polyps, internal nasal lesion, right hip contusion, right foot contusion, right knee

sprain, right ankle sprain, opioid dependence, influenza, non-alcoholic fatty liver

disease, scabies, bacterial sinusitis, post-viral cough syndrome, and the mental

impairments of unspecified anxiety disorder and autism spectrum disorder. *Id.*

The ALJ determined at step three that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the

listed impairments in the regulations, specifically listings 1.15 (disorders of the skeletal

spine), 1.18 (abnormality of a major joint(s)), 3.03 (asthma), and 11.14 (peripheral

---

[4] The Social Security Administration uses a five-step sequential process for
reviewing disability claims. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-
step process requires the ALJ to consider whether a claimant: (1) engaged in
substantial gainful activity during the alleged period of disability; (2) had a severe
impairment; (3) had a condition which met or equaled the severity of a listed
impairment; (4) could return to her past relevant work; and, if not, (5) could perform
other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4);
*Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden
of proof through step four; the Social Security Administration has the burden of proof at
step five. *Lax*, 489 F.3d at 1084.

neuropathy). AR 22. Because he concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) such that he can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. He can stand and/or walk 4 hours and sit 6 hours of an 8- hour workday. The claimant can never climb ladders, ropes, or scaffolds, can frequently balance, and can occasionally stoop, kneel, crouch, crawl, or climb ramps and stairs. He can tolerate frequent exposure to pulmonary irritants but can have no exposure to hazards, including unprotected heights or operating heavy machinery.

AR 23.

The ALJ found that Plaintiff was capable of performing past relevant work as a customer service representative and user support analyst. AR 29. Accordingly, Plaintiff was deemed not to have been under a disability from May 15, 2021 through July 3, 2023, the date of the decision. AR 30.

## Analysis

Plaintiff argues that the ALJ's unfavorable decision should be reversed and remanded on three grounds. First, Plaintiff claims that the ALJ erred by failing to either account for any mental limitations in the RFC or explain why such limitations were not included. Second, Plaintiff asserts that the ALJ erred in evaluating the medical opinions of Dr. Brittney Ziskind, Nurse Practitioner ("NP") Heather Manning, and Dr. Linda Thede. Finally, Plaintiff argues that the RFC does not include a two-step instructions limitation, which, if included, would have precluded Plaintiff from performing his past relevant work. The Court will address each in turn.

4

**I.      The ALJ's Evaluation of Plaintiff's Mental Limitations**

At step two, the ALJ determined that Plaintiff's "medically determinable mental impairments of unspecified anxiety disorder and autism spectrum disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." AR 20. The ALJ then found that Plaintiff had only mild limitations in the four areas of mental functioning known as the "paragraph B" criteria.

Regarding the first functional area—understanding, remembering, or applying information—the ALJ noted that while an examination found some mildly impaired memory due to anxiety, the evidence did not show any significant difficulties with mental functioning, and examinations found an ability to follow two-step instructions, a normal fund of knowledge, and intact memory. *Id.*

In the second functional area—interacting with others—the ALJ observed that Plaintiff interacted appropriately at the hearing and examinations found cooperative behavior, but that he testified to having some difficulty working with others. AR 21.

As to the third functional area—concentrating, persisting, or maintaining pace— the ALJ found that Plaintiff was able to follow along and answer questions at the hearing. He also reported having the ability to perform activities requiring some concentration and persistence, such as driving a vehicle, playing online games, watching television, paying bills, counting change, handling a savings account, and using a checkbook/money orders. *Id.* However, Plaintiff also reported having panic attacks. *Id.*

In the fourth functional area—adapting or managing oneself—the ALJ observed that treatment notes indicated the Plaintiff was independent with taking care of personal needs, and examinations found a normal appearance and normal grooming. *Id*. However, Plaintiff did experience excessive apprehension and worry. *Id.*

Plaintiff argues that even if the ALJ found that he was only mildly limited in the four paragraph B areas of mental functioning, the ALJ was still required to account for these limitations in the RFC, and his failure to do so requires remand.

Defendant maintains that the ALJ was not obligated to include any mental limitations in the RFC after finding that Plaintiff experienced only mild limitations in the paragraph B criteria. Defendant also states that the ALJ was not required to explain why he did not include any mental limitations in the RFC because there is no presumption that mild limitations result in any workplace restrictions.

The Court cannot agree with Defendant's position insofar that it can be interpreted as saying that the ALJ was not required to account for Plaintiff's non-severe mental limitations in the RFC. After all, the RFC analysis requires consideration of all of a claimant's medically determinable physical and mental impairments, both severe and non-severe. 20 C.F.R. § 404.1545(a)(2), (b)–(c), (e); SSR 96-8p at *5. A claimant's "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work." 20 C.F.R. § 404.1545(c). That is so even if a mental impairment is deemed non-severe because it, when considered alongside a claimant's

6

other impairments, "may prevent an individual from performing past relevant work." SSR 96-8p at *5.

Moreover, consideration of mental impairments during the RFC analysis is distinct from the determination of an impairment's severity at step two. *See Wells v. Colvin*, 727 F.3d 1061, 1068–69 (10th Cir. 2013) (clarifying that "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five."); SSR 96-8p, 1996 WL 374184, at *4. Therefore, a blanket statement indicating that step two findings relating to non-severe mental impairments have been incorporated into the RFC assessment is inadequate. *See id.*; *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013). Rather, "[t]he mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment." *Wells*, 727 F.3d at 1069 (citation omitted). "And that assessment is essential to later steps in the overall disability analysis." *Mary E. K. v. Kijakazi*, No. 21-cv-02373-TC, 2023 WL 4105155, at *3 (D. Kan. June 21, 2023).

Nevertheless, the Court finds that the ALJ did sufficiently address Plaintiff's non-severe mental limitations at step four. As discussed further below, the ALJ specifically examined the medical opinions regarding Plaintiff's mental health. He credited those opinions that found that Plaintiff's mental impairments were non-severe and discounted the opinions that judged Plaintiff's limitations greater and even disabling. *See* AR 27–28. He also explained why he weighed the opinion evidence as he did. *Id.* In general, the ALJ explained that examinations of Plaintiff "produced mostly benign mental findings" and noted Plaintiff's "good work history." In other words, the ALJ did not merely

rely on his step 2 findings concerning Plaintiff's mental impairments. *See Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (unpublished) (finding that, where an ALJ discussed a non-severe physical impairment in detail at step two and recognized the obligation to consider all impairments, including impairments that are not severe, at step four, the ALJ did not improperly rely on a step two analysis as a replacement for an RFC inquiry). The ALJ then concluded his RFC analysis by finding that Plaintiff's "assertion that he is not able to perform basic work activities is not consistent with the evidence, as it is inconsistent with his admitted activities of daily living and the treatment received." AR 29. "Based on all of the evidence of record," the ALJ limited Plaintiff to light work with additional physical limitations. *Id.* The Court takes the ALJ at his word when he states he reviewed all the evidence. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009). And, as Plaintiff concedes, the ALJ was not required to include the mild limitations determined from the paragraph B criteria in Plaintiff's RFC; he needed only to address the underlying non-severe medically determinable mental impairments, in combination with any physical impairments, in the RFC assessment. Here, the ALJ provided a detailed discussion of Plaintiff's impairments in step two, and then discussed the mental health impairments in the step four analysis. The Court is satisfied that, at step four, the ALJ "consider[ed] the combined effect of all medically determinable impairments, whether severe or not." *Wells*, 727 F.3d at 1069 (emphasis omitted).

## II.   The ALJ's Assessment of Medical Source Opinions

### a.  Applicable Law

In assessing a claimant's RFC, the ALJ must address medical source opinions. *See Vigil v. Colvin*, 805 F.3d 1199, 1201–02 (10th Cir. 2015). Effective March 27, 2017,

new regulations changed the procedures and standards for evaluating evidence, including medical source opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Under the old regulations, the opinions of treating sources were generally entitled to more weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating-source opinions were given "controlling weight" when they are "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent" with other substantial evidence in the record. *Id.* §§ 404.1527(c)(2), 416.927(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

The new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c abrogate the treating physician rule for claims filed on or after March 27, 2017. The Commissioner no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner considers the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors in evaluating persuasiveness are supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "[S]upportability

examines how closely connected a medical opinion is to the objective medical evidence." *Mileto v. Comm'r, SSA*, No. 21-1403, 2022 WL 17883809, at *3 (10th Cir. Dec. 23, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). The ALJ must explain her approach with respect to these first two factors when considering a medical opinion, but she is not required to expound on the remaining three unless she finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

### b.  The ALJ's Assessment of the Medical Opinions

In this case, Plaintiff takes issue with the ALJ's assessment of the opinions of Dr. Ziskind, NP Manning, and Dr. Thede.

### i.  Dr. Ziskind

As to Dr. Ziskind, the ALJ noted as follows:

> The claimant saw Brittney Ziskind, Ph.D., for a consultative examination in December 2021. Dr. Ziskind reviewed the claimant's history and performed a mental status examination. Upon examination, Dr. Ziskind observed cooperative behavior, casual dress, good grooming, fair eye contact, normal posture and motor behavior, fluent and clear speech, restrictive affect, anxious mood, adequate expressive and receptive language skills, coherent and goal-directed thought process, no hallucinations, no delusions, no paranoia, intact attention/concentration, mildly impaired memory skills due to anxiety, average intellectual functioning, appropriate fund of information, and fair insight and judgment.

AR 26 (internal citations to the record omitted). The ALJ then assessed Dr. Ziskind's opinion:

> I find not persuasive the opinions of Dr. Ziskind, which include mild limitation in understanding and remembering, moderate limitation in interacting with others, mild limitation in attention/concentration, and moderate limitation in ability to maintain well-being. Dr. Ziskind's opinions are not consistent with the record. For example, the claimant has no psychiatric hospitalizations or therapy subsequent to the alleged onset date. Examinations produced benign mental findings. Of note, the medical evidence does not document any worsening related to his autism spectrum disorder. Such limitations are also inconsistent with the claimant's work history in customer service, and his continued involvement with his church and the martial arts. In addition, Dr. Ziskind's opinions are not supportable, as objective findings do not support the conclusions. For example, upon examination, Dr. Ziskind found mostly benign mental findings, including cooperative behavior, good grooming, adequate language skills, coherent and goal-directed thought process, intact attention/concentration, and average intellectual functioning. Furthermore, Dr. Ziskind examined the claimant on only one occasion, and she appears to have relied primarily on the claimant' subjective reports. Therefore, I find the opinions not persuasive.

AR 26–27 (internal citations to the record omitted).

Plaintiff argues that the ALJ failed to provide a proper supportability and consistency analysis. Plaintiff first points out that Dr. Ziskind's opinions regarding Plaintiff's mental limitations are not that different from the ALJ's own paragraph B analysis, where the ALJ also found Plaintiff mildly limited to some areas of functioning. While the Court agrees that it is rather perplexing for the ALJ to cite Dr. Ziskind's opinion in support of his step two paragraph B analysis, only to reject it at step four, the Court presumes that the rejection is related to Dr. Ziskind's findings of moderate limitations in Plaintiff's ability to interact with others and maintain well-being as well. As Defendant notes, the ALJ pointing out that these limitations would be inconsistent with Plaintiff's past customer service work, his social activities, and his examination findings is reasonable. In any event, the ALJ did determine that Plaintiff had mild limitations in the four areas of functioning, and he explained why he disagreed with Dr. Ziskind's findings of some moderate limitations. To the extent that these creates an "internal

inconsistency," it is not one that requires remand. *See Keyes-Zachary*, 695 F.3d at 1166

("Where, as here, we can follow the adjudicator's reasoning in conducting our review,

and can determine that correct legal standards have been applied, merely technical

omissions in the ALJ's reasoning do not dictate reversal.").

Plaintiff also criticizes the fact that the ALJ noted that Dr. Ziskind "examined the

claimant on only one occasion, and she appears to have relied primarily on the

claimant's subjective reports." These are appropriate issues to raise, however, as they

relate to the factors outlined in the regulations (supportability and treating relationship,

respectively). Further, neither fact was dispositive to the ALJ's rejection of the medical

opinion.

### ii.  NP Manning

The ALJ discounted NP Manning's medical opinion:

> I find not persuasive the opinion of Heather Manning, FNP, that the claimant has difficulty with socialization, communications, developmental delays, learning difficulties, attention challenges, and other challenging behaviors that make employment difficult to impossible, which has made him disabled since January 2017 when she started treating him. Nurse practitioner Manning's opinion is not consistent with the record. For example, examinations produced benign mental findings. The opinion is also inconsistent with the claimant's good work history, and the lack of mental health treatment. In addition, the opinion is not supportable, as objective findings do not support the conclusion. For example, upon examination, nurse practitioner Manning found many benign mental findings, including normal appearance, normal mood and affect, normal cognition, normal memory, and normal judgment. Furthermore, her opinion is conclusory, and I note that determination of disability is an issue reserved solely for the Commissioner (20 CFR 404.1527(d) and 416.927(d)). Therefore, I find the opinion not persuasive.

AR 27 (internal citations to the record omitted).

Plaintiff complains that the ALJ's treatment of NP Manning's opinion was

deficient for the same reasons as his evaluation of Dr. Ziskind's; namely, it is internally

12

inconsistent and the ALJ did not provide a sufficient explanation of consistency and supportability. The Court cannot agree.

Plaintiff claims that, like NP Manning, the ALJ determined in his paragraph B analysis that Plaintiff had "difficulty in socialization, communications, developmental delays, learning difficulties, attention challenges, as well as other challenging behaviors that make employment difficult to impossible." Therefore, it was inconsistent for the ALJ to reject NP Manning's opinion at step four. The obvious response is that NP Manning deemed these difficulties to be per se disabling, and the ALJ found them to be non-severe. This is not internally inconsistent, and the ALJ's reasoning is easy to discern from the decision.

Moreover, the ALJ explained why NP Manning's statement regarding Plaintiff's limitations were not consistent with the record as a whole—which showed benign mental findings on examinations, a lack of mental health treatment, and that Plaintiff had a good work history—nor supported by objective findings, which were consistently "normal." This is all that is required under the regulations.

Finally, the ALJ was justified in rejecting NP Manning's opinion insofar as it stated that Plaintiff was disabled and unable to work. Under 20 C.F.R. § 404.1527(d)(1)–(3), the determination of disability is reserved for the Commissioner. The Court finds no reversible error in the ALJ's decision to give little weight to NP Manning's opinion due to its conclusory nature and its inconsistency with the record as a whole.

### iii.  Dr. Thede

As to Dr. Thede, the ALJ found as follows:

> I find not persuasive the opinion of Linda Thede, Psy.D., who saw the claimant for a neuropsychological evaluation in September 2017, that the claimant struggles with socialization, maintaining employment, and sensory processing; he tends to isolate away from others; and his writing has always been a challenge for him. The opinions are not consistent with the record. For example, examinations produced benign mental findings. The opinion is also not consistent with his good work history in customer service. In addition, Dr. Thede's opinion is not supportable, as objective findings do not support the conclusions. For example, upon examination, Dr. Thede found cooperative behavior, and upon testing, Dr. Thede found an average full scale IQ score. Furthermore, Dr. Thede provided her opinion prior to and remote in time to the alleged onset date. Therefore, I find the opinion not persuasive.

AR 27 (internal citations to the record omitted).

Plaintiff again argues that it was inconsistent for the ALJ to agree that Plaintiff had mild issues in mental functioning but not find Dr. Thede's opinion persuasive. The Court again disagrees. The ALJ was within his rights to find Dr. Thede's medical opinion unpersuasive because he deemed it inconsistent with the records and not supported by Dr. Thede's own objective findings. The Court will not and cannot reweigh that evidence here. It was also appropriate for the ALJ to note that Dr. Thede's 2017 examination was remote in time to the relevant period. Indeed, this alone is likely sufficient grounds to reject the opinion.

The Court finds that the ALJ did not err is assessing the medical opinion evidence.

**III.   The ALJ's Failure to Include a Two-Step Instructions Limitation**

Finally, Plaintiff argues that the ALJ erred in assessing the Plaintiff's RFC because the RFC does not include a two-step instructions limitation. Plaintiff reasons that during the ALJ's analysis of Plaintiff's ability to understand, remember, or apply information, he found Plaintiff to have mild limitations in this area. In making this finding, ALJ referred to an examination in the Plaintiff's medical records that demonstrated the

Plaintiff was able to follow two-step instructions. Therefore, according to Plaintiff, the ALJ "inherently adopted" a two-step instructions limitation and needed to include it in RFC. This reasoning is specious. As Defendant points out, neither the medical source nor the ALJ *limited* Plaintiff to two-step instructions. Indeed, the record in question appears to cite Plaintiff's ability to follow two-step instruction as indicative that his mental status was normal. In other words, the ALJ cannot be said to have "inherently adopted" a limitation that was not in the record in the first place. The ALJ did not err by not including a two-step instructions limitation in the RFC.

## Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. Plaintiff's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 9th day of September, 2024.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge

15